Good morning, Your Honor. May it please the Court, Todd Dressel of Chapman & Cutler on behalf of the Appellant, the Plan Committee, as established in the bankruptcy cases of Washington Group International, Inc., WGI for short in this matter. I'd like to reserve two minutes for rebuttal in this matter. The decision of the District Court below was based upon the incorrect premise that the bankruptcy court was denying GIT, Ground Improvement Techniques, the appellee here, the right to collect post-petition interest directly from the Department of Energy. And you're going to hear from an appellee today discuss the independent obligation of the Department of Energy to GIT as well as discussions of an implied contract. Those are not relevant to the issues before the Court. Whether or not GIT has direct claims against the DOE, implied or otherwise, was irrelevant to the decisions below as well as the matters that are before the Court. Whether or not GIT does have direct claims against the Department of Energy will now be decided in the Federal Claims Court action that GIT has commenced against the government. Can you help me with just this threshold issue? Because I'm looking at you just wondering why in the world you're here. And I will – seriously, I do need help on that. As I read the district court's order, the district court was saying, GIT, go for it. Get whatever you can from DOE, including post-judgment interest if you're able. But if you come up short, you're not going to be allowed to come back and take anything from the estate. That's how I read the district court's order. And if that's true, then you don't have any reason to be here, right? If that was the actual circumstance, Your Honor, then we would agree. Okay. But the problem is that's not what GIT is arguing here. GIT is arguing if they can't get everything from the government, they can come back and get whatever's left from the bankruptcy estate. From your guys' money. From our pool of reserve. But so just help me. I mean, if I'm just looking at page 13 of the district court's order, I guess. Yes. And I thought the district court made perfectly clear that that was not going to be allowed to happen. It says, I'm just reading, GIT cannot and will not recover interest from the estate as a result of a ruling that it can recover interest from the DOE. And then the court goes on in a footnote to say it sounded like the district court said, and GIT sort of signed off on that and said, yeah, yeah, no, we just want to go against DOE and we're not going to be coming back here. And that was the, where the district court left it. And so if you're saying that that's wrong, help me understand how that could be. I think the problem is, is because the court did not go down the next steps, which is the governing law of sovereign immunity and governmental contracts law that relates to the claim of GIT. The only thing that was in front of the bankruptcy court was the pass-through claim of Washington Group, the prime contractor that will be submitted to the Department of Energy. Under those circumstances, what you look at is the liability of the prime contractor, not GIT's damages directly to the Department of Energy, but you look at the damages of the prime contractor. That's the Severn doctrine that we talk about in the case. And I think, jumping straight forward to the Brazier Products case, what I think is completely on point here is, while in that case they did have the circumstance where the prime contractor who filed for bankruptcy, the government argued to dismiss the pass-through claim because it couldn't satisfy the Severn doctrine because the reorganized prime contractor had been discharged from its obligation to the subcontractor. In that case, the prime contractor went back and modified its plan and said, I, reorganized prime contractor, will remain liable for the obligations to the subcontractor, but will have a settlement that says you have no recourse against me. You just get whatever my suit has against the Federal government. We don't have that in this case. What we have is the claims court went beyond in Brazier and said, listen, even if there wasn't a modification to the plan, because the subcontractor claimant will be able to obtain his pro rata share of consideration made available to unsecured creditors in the prime's bankruptcy case, there's some liability to satisfy the ability of the prime's pass-through claim to be submitted to the Federal government. In other words, the allowed claim is the liability that will be submitted to the Federal government. So allowing post-petition interest to be included in that allowed claim, which we all know under 502B and WGI's bankruptcy plan, that post-petition interest is never allowed on the part of an unsecured client. It's never allowed to be taken out of the estate. Correct, Your Honor. But you still haven't quite gotten me there. The district court said that is not going to happen here. It cannot and it will not happen. So if that's true. One, I mean, we can stand here and say we just want the district court to follow law, and that's just not the law under Brazier. But, two, because GIT would never have an allowed claim against bankruptcy estate for post-petition interest, and therefore, it would never have some liability for GIT's pass-through claim to be submitted to the Department of Energy for reimbursement. That aside, you put post-petition interest with the principal portion as the allowed claim, and that is what is submitted to the government for reimbursement. What if, and we don't know what's going to happen. The DOE has never been a party to the bankruptcy proceedings or any other proceedings. We don't know what the liability of the DOE is. But what if the federal claims court that now will be looking at the liability and looking at the pass-through claim determines that only portions of the claim are reimbursable under the contract with WGI, and then they are able to obtain post-petition interest on those portions that are allowable. But now there's going to be declined portions that are a judgment against WGI and are part of its allowed claim in the bankruptcy case. It will now be allowed to come back to the bankruptcy case to get a distribution on that remaining portion, in essence, providing a distribution based on post-petition interest. I thought that's what that national energy case from, is it the Fourth Circuit, that the district court was talking about. I thought that's the exact situation the court there dealt with and said, no, you don't get to parse it out so that you try to recover. You try to say, well, most of what I recovered was, you know, I can't remember if it was principal or interest. But you know what I'm saying. You can't sort of at your, to your benefit, carve up the portion of the recovery so that it maximizes how much you can then take from the estate. Burschell, Your Honor, if counsel for GIT, which there are issues whether or not of how it would be binding on the matters going forward in the Federal Claims Court, but if we were under the circumstance where GIT, such as what the Brazier case, the Kentucky Bridge case, where basically you can look at maybe they expanded or broadened the scope of what liability is required under the Severn doctrine to conditional liability, in those circumstances where you have settlements where the subcontractor will agree, listen, I'll just take whatever the claim, whatever comes out of the litigation against the government, and I'll have no recourse against the prime contractor. Alito, if he stands up here and says, yeah, I agree with that, we're going to take whatever we can get, then you'll go home happy, and this will be done. And I'll never take anything on account of my allowed claim in the bankruptcy case. Right. I'll pack up my bags and go home happily. I got you. I got you. The problem is, is that's not the circumstance here. And the case that you cited and the fairness test that the district court was using in this determination, in other words, he didn't want to allow the DOE to get the benefit of WGI's bankruptcy charge in violation of 524E, that doesn't apply here, because in applying the Severn doctrine, the sovereign immunity, there is no derivative or direct liability of the Federal government to the subcontractor. Remember, I'm only talking about the pass-through claim. If they have direct claims against the government, fine. Go litigate it, and we're not talking about that today. But in the pass-through claim, you have to look at the liability of the prime contractor. And so the circumstances such as a co-debtor or guarantor situation, they have a separate liability to the claimant. So the third party, under those circumstances, shouldn't get the benefit. Like in the Metro Commercial case, you had the partner who was liability, who was liable for the debts of the debtor partnership. And he argued, well, post-petition interest was discharged against partnership, and therefore, I shouldn't have to pay it. And no, he had separate liability for the debts of the partnership, and because of 524E, he doesn't get the benefit of the debtor's bankruptcy charge. Ginsburg. You're just saying here there is no liability under Severn because you can't have this subcontractor liability in light of sovereign immunity. Correct. Under what the Claims Court told us in Grazier, that under the circumstance where you don't have the settlement agreement that maybe we'll get today, that if that just because the unsecured creditor, the subcontractor as an unsecured creditor in the bankruptcy case, gets an allowed claim and can share pro rata as all other general unsecured creditors can on the prime, excuse me, under the prime's claim, that that is sufficient to establish some liability as required under the Severn doctrine. And what we're saying here is post-petition interest, very well-settled law, 502B, and the bankruptcy plan itself says you don't get, you unsecured creditor don't get post-petition interest on account of your life, on account of your claim. But the question is, that I'm also troubled with, is that's what the bankruptcy judge said, and the district court reversed, but not on that point. Did the district court say somehow that you would get post-petition interest against the bankrupt company? Well, the one and only thing that the district court judge could do in overturning Judge Zives' decision was allow post-petition interest on his unsecured claim. The problem is the district. But not against the bankrupt. What, as I read the opinion, it's, you can go against the DOE and you can get post-petition you can get in all the interest you can get, and you don't object to that. You're worried that somehow they're going to be entitled to interest, but if they get a judgment and interest, they're going to be able to collect it against the DOE. Why is it ever coming back to the bankruptcy? The problem is, when we think about this, we have to separate our discussions of DIT's direct claims against the Department of Energy and the pass-through claim, which is based upon the liability of the prime. We agree, direct claims, they can go and get whatever they want. The problem is, is that on the pass-through claim, we're talking about the liability of the prime, the debtor in this case. And under Brasier, that's the allowed claim in the bankruptcy case. You can't just say we're going to separate out post-petition interest, because it doesn't work that way, and the law doesn't support that. And so what gets submitted to the Department of Energy in the pass-through claim is their, is in essence, their allowed claim in the bankruptcy case. Well, it makes, you're much more familiar with how this works than I am, but I guess I thought that we know exactly how much the sort of principal amount of the judgment is, right, because that was fixed in that other case. But it's made up of many different things, Your Honor. And so what becomes an allowable or a cost-reimbursable item to the Federal Government, I mean, this matter, this has been going on for over 18 years, two jury trials, two appeals to the Tenth Circuit, and if you review the decisions in the Tenth Circuit, there's multiple things that make up that principal portion. Alito, but just help me with this. So, but don't, aren't we going to be able to, however many components go into the amount of the principal judgment, aren't we going to be able to separate that from whatever the post-judgment interest component would be? Aren't we going to be able to figure out what dollars fall into which bucket? Hopefully. But the problem is, is that if they get a portion of their claim allowed, and they get post-petition interest on those portions, but they can still yet come back to the bankruptcy case, they will actually, they could potentially then get paid in the distribution. But hang on. Okay. Let's just, I'm going to make up numbers, round numbers, so that it's easy, okay? Let's say that the principal amount of the judgment is $1 million, and post-judgment interest is $500,000. They submit the whole $1.5 million to the, I guess it's the claims court, right, against DOE, and they recover, let's say they only recover $750,000. Aren't we, and so there's a $250,000 shortfall, even on the principal amount of the judgment. You don't contest their ability to come back to the bankruptcy estate and get their pro-rat share of that, right? That's a part of the problem. It depends on what that is, and that's, and that's the, I think that's the problem. But that's the debt that W, is it WGI, that's the debt that the debtor owes to them, right? It's, that's their unsecured claim. It's for $1 million. That's what the the $750,000 that they obtain judgment on is that $500,000 in principal and $250,000. That's what I'm saying. Aren't we going to get some determination in the claims court as to that allocation? Your Honor, I think we're guessing at this point, and I don't know if we're going to know. What if there's a settlement? What if we don't know, what if there isn't a parsing between the various portions? And I think that's the danger of saying what they can obtain in their direct claims against the Department of Energy, and what Severin and the principles of sovereign immunity tell us under federal government's contracts law on a pass-through claim. And I, I think that's, I, you know, we can guess as much as we want of what it's going to look like down the road, but that's something that the federal claims court is going to determine of the liability of the DOE eventually down the road. And we, we want them to pay as much as they can, if not all of it. But I think our problem is, I see I'm running out of time. I just, I hope this Court won't miss what is the direct claims and what is required to establish a pass-through claim under federal contracts law. Thank you. Thank you. So are you going to make this the shortest argument in history by just telling us? And we can all pack up and go home, just, right? No. I have a feeling that you've got something else you're going to say. Please, Your Court. We ask the question, too, why are we here? Because in our view, it's pretty straightforward. If it's part of the allowed claim that gets rejected by the DOE, the only the allowed claim would come back to the bankruptcy court. We haven't asked, in fact, we've stipulated all along the line here, that we are not going to seek interest against the estate. And that's just the way it is. Now, the debtor, the debtor's judgment debt, the liability is set forth in the second modified amended judgment that was entered by the Colorado District Court. That entire judgment debt passes on to the DOE, including the interest. There's no, it's not, and Brazier doesn't hold, that only an allowed claim passes on to the DOE. In fact, the Colorado District Court expressly addressed that issue and found that the DOE is independently obligated to pay the entire judgment. It's under the rules of the Federal Acquisition Regulations, its own rules. It's all set forth in Judge Boland's order, who explains it in detail, that the Department of Energy is independently obligated to satisfy the entire judgment debt. Well, if that's the case, and that happens, they seem to be a nice person to sue if you're looking for money, you're never going to go back to the bankruptcy court, are you? Yeah, we would not. We would not expect to. In fact, that alternative seems to me to eliminate the any dispute in this court. That would seem to us also, Your Honor. That's why we're puzzled. Why are we here? The ---- Well, let me, let me ask it in direct terms, then, because I'll, I mean, I know the answer they want. So let's say, using my hypothetical numbers, $1 million for the principal judgment, there's $500,000 in post-judgment interest. You go to DOE, and all, and for whatever reason, the claims court says, DOE, all you have to pay is the $1 million on the principal judgment. I can't, your client is G.I.T. G.I.T., you don't get any post-judgment interest. That whole $500,000 is out. Sorry. Are you saying that in that circumstance, you cannot come back to the bankruptcy estate and try to get paid on the $500,000 in post-judgment interest? I am saying that, yes, Your Honor. And we've agreed to that all along. I mean, the ---- And why are we here? Exactly what I've said. As I heard you say, we will not seek interest against the estate. That's correct. And the bankruptcy court judge was told that. And the district court judge recognized that the bankruptcy court was told that. And that we told the district court judge that, too. In fact, the district court judge characterized the plan committee's argument as, quote, a red herring. That for some speculative reason, that we would come back and try to seek what we have not been allowed to seek. And the district court judge pointed to the Fourth Circuit opinion and said, even if you tried to do that, you're not going to be able to get away with it because of the Fourth Circuit opinion, which I don't think the district court judge took into account. But here, GIT should have the right to obtain the entire judgment debt because it was an independent obligation of the Department of Energy. It was set forth in their contract between them and WGI. It was set forth in their regulations that they are responsible for the entire judgment liability. They pay all the litigation costs of the debtor. They pay the entire judgment. They pay the interest and everything associated with it. Or any settlement that arises out of the matter. It's paid entirely by the Department of Energy. So there is no reason to come before this court and say, don't let them do that. Because there's no benefit whatsoever to the plan committee. All that does is give a tremendous windfall to the Department of Energy and a complete forfeiture to WGI or to GIT. We've gone 15 years without being paid for tens of millions of dollars worth of work that the Department of Energy has had and has used for 15 years without payment. And to now say, well, GIT, you can't recover the interest against the Department of Energy because you might go back to the plan committee, which you said you won't do, is simply imposing unfairness on GIT and giving the government a tremendous windfall. You know, as the judge in this case stated, he says, you know, we must do justice. Well, there's no justice in that result. It's simply imposing a forfeiture on GIT that brings absolutely no benefit to the debtor. It brings absolutely no benefit to the plan committee. I agree. Okay. Maybe we should. Maybe we should hear if that sounds like it. If I decide you're going to need more time, I'll give it back to you. But I think, you know, the specific issues are well briefed, but we've now put the main issue on the table. So let me just go back and hear from the plan. Can we pack up and go home, given what you've heard? Let's change the circumstance and they get an allowed they get the Federal Claims Court says that we're going to allow $750,000 of principal and you're going to get $250,000 of interest on that. Right. And that's a million dollars. Do they still get to come back to the to us for $250,000 that was denied? We will not see.  So they have they will now get more on account of their allowed claim than they would have in the bankruptcy case. No, I mean, I would say no, they couldn't, not based on what they said. I see. All right. I'd like to hear that because that's not their answer. Okay. Well, that's not their answer because I heard him say we will not seek interest against the estate. That's the problem. They wouldn't be. They would be coming back. They would be coming back for the portion of $250,000 of principal that was denied. Correct. But in essence, they're getting paid for post-petition interest because they help receive more on account of the past due claim from the Department of Energy. How is the estate hurt in that circumstance? Because the estate's still not on the hook for any more than it otherwise would have been. They will be obtaining more on account of their claim than they would have in the bankruptcy case. And they would be, in essence, receiving a distribution on account of post-petition interest. That's exactly what the case says, is the all or nothing. You can't – if you can't get everything, you can't come back for a portion. But now you're telling me they can. That's the problem. If you mix their direct claims with their past due claim, that's our problem because it's the liability of the prime that gets submitted to the Department of Energy. So in your circumstance, if they get $750,000 of principal out and they get $250,000 of post-judgment interest on that, that's a million dollars. That's their entire principal. They're going to argue, but we have $250,000 of principal that was allowed in our bankruptcy case to get our distribution on that $250,000. But what's wrong with that, though? Because what the case says – Hang on. The State was on the hook. If DOE didn't pay a penny, the State was going to be on the hook for the full million dollars anyway, right? Correct. So the DOE has done you guys a favor by saying – not by saying, but by being ordered to pay $750,000. There's still the shortfall on the amount that the State was originally on the hook for. But they're now receiving money on account of post-petition interest by coming back and getting a distribution on the $250,000 from us. That's why the case – and I'm forgetting the name of the case right now. It says if you go against the third party, you have to get all or nothing, or you don't get to come back to the bankruptcy case. You're mixing principal with principal. So to ensure that that does not happen, would we reverse or affirm the district judge? You would reverse the district judge, which we didn't get to the third issue, which was its overturning of the Holloway decision as a part of it. It was on appeal. He didn't have jurisdiction to overrule it. And it creates a mess because it ignores the fact that we are dealing with just the pass-through claim. You have to look at Severin. You have to look at the principles of Federal Government contract law. If you don't, you mix principal with interest, which you can't do when you allow a general unsecured claim. So if we were to reverse, does it go back for further fact-finding? No. If you reverse the – and reinstate the judge's decision, what happens is GIT – Bankruptcy. I'm sorry. The bankruptcy court's decision is that claims allowed for the principal amount. GIT is allowed to continue its lawsuit in the Federal Claims Court on its first three counts, its direct claims against the DOE. You can go after whatever it wants on those claims. But on the pass-through claim, its count four in that suit, it cannot seek post-petition interest on account of that claim against the Federal Government. Why shouldn't it be entitled to recover in a pass-through in the post – even though they can't get it against the bankruptcy estate, why shouldn't they be able to get it against the DOE? That doesn't seem right. Your Honor, because of the – imposing the Severing Doctrine and the principles of sovereign immunity to this situation on the pass-through claim, you're looking at the liability of the prime. I understand you're making a fairness argument, but the problem is the fairness argument doesn't fit in the circumstance because you do have the intervening law of governmental contract law and sovereign immunity. And I explained on those circumstances, if they can get – if they get $1.5 million from the government, great. Then we'll never see them again. The problem is when you get less. Okay. We have your argument. I apologize. No, no. That's fine. We asked you to come back and we'd like to hear back from you. Thank you. Do you want to hear more? Yeah. Just if you have a wrap – some wrap-up comments.  he did, so. I understand, Your Honor. There is no harm done if G.I.T. is unable to recover the entire allowed claim from the Department of Energy and come back to the estate and ask to be paid what the estate is obligated to pay. There's no confusion there. It doesn't implicate any of the issues under 502B2. There's no unfairness. There's no additional administrative burden. It's the same obligation except less than what the estate is already obligated to pay out of this $9.8 million allowed claim. I mean, G.I.T. is entitled to that now against the estate. If we go to the Department of Energy and recover a portion of that, it actually benefits the estate. It doesn't cause harm. It doesn't cause any confusion. It doesn't cause additional administrative expense. But what it does do by reversing the district court's order and saying that G.I.T. cannot go and recover interest against the Department of Energy, what it does is it imposes a total forfeiture on G.I.T. of millions of dollars and it gives a windfall benefit to the Department of Energy obligation for that interest under 524E. There's no other reason the Department of Energy would not be obligated to pay its portion of the interest but for discharging that obligation because the debtor doesn't pay it. And that's what the district court found was the error in the bankruptcy court's ruling.  The district court pretty much admitted that it was discharging the DOE. He quoted, and I'm quoting out of our supplemental excerpts of record at 196, line numbers are 7 through 13, the only obligation the DOE has is a pass-through obligation. It is not an obligor or co-obligor. It is only obligated on a pass-through basis. It gets the benefit, pursuant to my reading of the statute, of any benefit W.G.I. gets. W.G.I. here gets the benefit of the discharge. That's what pass-through is all about. That's clearly a violation of 524E. He's granting them a discharge benefit to the Department of Energy, which they're not entitled to. There's no harm done here by allowing G.I.T. to recover its post-judgment interest. Can I just ask the hypothetical he came back with? You get 750 on the million dollars, but you do get $250,000 in post-judgment interest on the 750, so you get a million total. You would say in that scenario that you get to come back for the $250,000 shortfall on the principal judgment? I would, because there's no harm to the estate. There's no additional cost. There's no additional administrative burden. There's no unfairness to the creditors. There's no unfairness to the plan committee. There's no unfairness to the estate or anybody else. It's an obligation they already have. And, in fact, it's a lessened administrative burden. It's a lessened impact on the creditors. It's a lessened impact on the plan committee. They suffer no harm. There is no reason not to allow G.I.T. to come back and obtain what they already owe at a lesser amount. It's nothing but benefit. Because the Department of Energy would have paid the 750 under that hypothetical. Okay. I think we have both parties' positions well in mind now. Thank you very much for the briefing and the argument this morning. The case just argued is submitted and we're adjourned for the morning. Thank you.
judges: Zilly, McKeown, Watford